FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL S.,[1] | No. 4:20-cv-05196-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | **ECF Nos. 20, 21** |

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names.  *See*

LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER - 1

1    Before the Court are the parties' cross-motions for summary judgment. ECF

2    Nos. 20, 21. The Court, having reviewed the administrative record and the parties'

3    briefing, is fully informed. For the reasons discussed below, the Court grants

4    Plaintiff's motion, ECF No. 20, and denies Defendant's motion, ECF No. 21.

## JURISDICTION

6    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

8    A district court's review of a final decision of the Commissioner of Social

9    Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

10   limited; the Commissioner's decision will be disturbed "only if it is not supported

11   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

12   1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

13   reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

14   (quotation and citation omitted). Stated differently, substantial evidence equates to

15   "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

16   citation omitted). In determining whether the standard has been satisfied, a

17   reviewing court must consider the entire record as a whole rather than searching

18   for supporting evidence in isolation. *Id.*

19   In reviewing a denial of benefits, a district court may not substitute its

20   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 416.920(d).

3         If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9         At step four, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing work that he or she has performed in

11 the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12 capable of performing past relevant work, the Commissioner must find that the

13 claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14 performing such work, the analysis proceeds to step five.

15        At step five, the Commissioner considers whether, in view of the claimant's

16 RFC, the claimant is capable of performing other work in the national economy.

17 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18 must also consider vocational factors such as the claimant's age, education and

19 past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20 Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 4, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of October 4, 2017.  Tr. 15, 38, 65, 160-75.  The application was denied initially, and on reconsideration. Tr. 85-92, 96-102.  Plaintiff appeared before an administrative law judge (ALJ) on October 10, 2019.  Tr. 35-59.  On October 29, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 4, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:

degenerative disc disease, migraines, congestive heart failure (CHF), anxiety

disorder, and polysubstance use/abuse. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform

medium work with the following limitations:

> [Plaintiff can perform] posturals at occasional [sic], except he can
> never climb ladders, ropes or scaffolds. He must avoid concentrated
> exposure to extreme temperatures and hazards. From a psychological
> perspective, [Plaintiff] is able to understand, remember, and carryout
> simple routine tasks; he can maintain concentration, persistence, and
> pace on simple routine tasks for 2-hour intervals between regularly
> scheduled breaks. [Plaintiff] can adapt to normal changes. There
> should be no fast-paced production rate of work. Interaction with
> others, including the public and coworkers, is limited to occasional
> and superficial.

Tr. 19-20.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 25. At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as laundry worker II, and lab equipment cleaner. Tr. 26. Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from the date of the application through the date of the decision. Tr. 27.

ORDER - 7

On August 14, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 20 at 6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate the opinions of Desmond Tuason, M.D.; James Opara, M.D.; Patrick Metoyer, Ph.D.; and Sarah Hodge, LPN. *Id.* at 8-16.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

ORDER - 8

C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

medical finding(s), the more persuasive the medical opinions or
prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior
administrative medical finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative medical
finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how
the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when
two or more medical opinions or prior administrative findings "about the same
issue are both equally well-supported . . . and consistent with the record . . . but are
not exactly the same," the ALJ is required to explain how "the other most
persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.
§ 416.920c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the
regulations displace the longstanding case law requiring an ALJ to provide specific
and legitimate reasons to reject an examining provider's opinion.  *Woods v.
Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The
Court held that the new regulations eliminate any hierarchy of medical opinions,
and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court
reasoned the "relationship factors" remain relevant under the new regulations, and
thus the ALJ can still consider the length and purpose of the treatment relationship,
the frequency of examinations, the kinds and extent of examinations that the

ORDER - 10

medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at *6.  However, the ALJ is not required to make specific findings regarding the relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent.  *Id.*

### 1.  Dr. Tuason

On April 24, 2018, Dr. Tuason, a reviewing physician, opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk about six hours and sit for about six hours in an eight-hour workday; he can frequently climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; he can occasionally stoop kneel, crouch, or crawl; he is limited in far acuity in both eyes; and he should avoid concentrated exposure to extreme cold, extreme heat, and hazards.  Tr. 74-76.  The ALJ found Dr. Tuason's opinion generally persuasive, in terms of postural limitations, but found that the rest of his opinion unpersuasive.  Tr. 24.

The ALJ found that "generally unremarkable physical examinations findings in the longitudinal medical record after the examiner issued his opinion support a greater exertional capacity."  *Id.*  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20

ORDER - 11

C.F.R. § 416.920c(b)(2).  The more consistent an opinion is with the evidence

from other sources, the more persuasive the opinion is.  20 C.F.R. §

416.920c(c)(2).  Plaintiff contends that records after Dr. Tuason's opinion support

his limitation to light work, because Plaintiff's condition declined after Dr.

Tuason's opinion.  ECF No. 20 at 10-11.  Defendant contends the ALJ reasonably

found Dr. Tuason's opinion unpersuasive because it is inconsistent with evidence

discussed by the ALJ elsewhere in the decision.  ECF No. 21 at 13.

The ALJ does not cite evidence supporting her conclusion in the discussion

of Dr. Tuason's opinion but provides a summary of medical evidence earlier in the

decision.  *See* Tr. 20-23.  The ALJ cites more than once to "generally

unremarkable" physical health assessments from Benton County jail in 2018,

where nurses noted musculoskeletal exam within normal limits, including grossly

normal strength and function in all extremities, and normal gait.  Tr. 21, 23 (citing

Tr. 421, 448, 472, 496).  Plaintiff argues, however, that other medical records from

the jail during this period also show development of bilateral lower extremity

edema, with pitting edema and visible swelling of his legs; and a treatment

recommendation to elevate his legs.  ECF No. 20 at 10; *see* Tr. 325, 345-49, 366,

371-73, 375-76.  An ALJ may discredit physicians' opinions that are unsupported

by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir. 2004).  However, the ALJ must consider all the relevant evidence in

ORDER - 12

the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Earlier in the decision, the ALJ notes that records beginning in late 2018 show bilateral edema in Plaintiff's legs and feet, that Plaintiff reported it was painful to walk due to swelling in his feet and was observed ambulating with an unsteady gait, and that treatment recommendations in October 2018 and January 2019 included instruction to elevate his legs; the ALJ also noted Plaintiff was diagnosed with CHF in late 2018. Tr. 21-22, 24. In focusing on a few generally unremarkable exams to discount Dr. Tuason's opinion when the longitudinal record shows more mixed findings, the ALJ fails to accurately characterize the record during the period at issue.

Further, because the ALJ limited the discussion of consistency to evidence after Dr. Tuason's opinion, she failed to discuss whether Dr. Tuason's April 2018 opinion is consistent with the April 2018 opinion of consultative examiner Dr. Opara, rendered ten days before Dr. Tuason's review of the records. *See* Tr. 312-17. Dr. Opara limited Plaintiff to standing and walking two hours in an eight-hour day, his evaluation included the lumbar spine imaging, and his evaluation was part of Dr. Tuason's review of the record. *See* Tr. 68, 71, 74-77, 312-17. The ALJ's

ORDER - 13

1  rejection of Dr. Tuason's exertional limitations is not supported by substantial

2  evidence.

3        The ALJ also did not address the supportability of Dr. Tuason's opinion, as

4  required by the regulations.  Supportability and consistency are the most important

5  factors an ALJ must consider when determining how persuasive a medical opinion

6  is, and therefore the ALJ is required to explain how both factors were considered.

7  20 C.F.R. § 416.920c(b)(2).  The more relevant objective evidence and supporting

8  explanations that support a medical opinion, the more persuasive the medical

9  opinion is.  20 C.F.R. § 416.920c(c)(1).  Defendant contends that the ALJ

10 adequately addressed supportability in discussing Dr. Tuason's opinion about

11 Plaintiff's visual limitations, but Plaintiff has not challenged these findings, and

12 Dr. Tuason also provided narrative support for other portions of his RFC, which

13 the ALJ did not address.  ECF No. 21 at 12; *see* Tr. 75-76.  Dr. Tuason explained

14 Plaintiff's limitations were due to degenerative disc disease and hypertension; and

15 he noted Plaintiff's reports of "chronic low back pain since childhood [due to]

16 injury while living in several foster homes," along with objective findings from the

17 April 2018 x-ray at the consultive exam, which he noted showed mild scoliosis

18 with diffuse degenerative disc disease of the spine.  Tr. 75-76.

19       The ALJ's conclusions regarding Dr. Tuason's opinion are not supported by

20 substantial evidence, and the ALJ failed to adequately address the supportability

and consistency of Dr. Tuason's opinion with relevant evidence during the period at issue. Any errors in assessing Dr. Tuason's opinion were not harmless, as Plaintiff notes, because in accordance with Dr. Tuason's opinion limiting Plaintiff to light exertion, Plaintiff would be found disabled pursuant to Medical-Vocational Rule 202.04 as of his 55th birthday, May 18, 2019. ECF No. 20 at 8-10.

Upon remand the ALJ is instructed to reconsider Dr. Tuason's opinion with the factors required by the regulations for the entire period at issue, and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinion.

### 2. Dr. Opara

On April 14, 2018, Dr. Opara conducted a physical consultative examination and rendered an opinion on Plaintiff's level of functioning. Tr. 312-17. Dr. Opara diagnosed him with chronic migraine headache with normal neurologic exam; lower back pain "due to lumbar strain with diminished range of motion of the lumbar spine with antalgic gait"; deformity of the left fifth finger; and limited use of the hands "with good hand grip." Tr. 315-16. Dr. Opara also diagnosed him with PTSD, insomnia, depression, and anxiety, noting he deferred to a mental health examiner for these issues. *Id.* He opined Plaintiff could stand and walk two hours in an eight-hour workday, and that he had no limitations in sitting. Tr. 316. He opined Plaintiff could lift and carry 50 pounds occasionally and 25 pounds

ORDER - 15

frequently; and that he was limited to occasional climbing steps, stairs, ladders, scaffolds and ropes, and occasional balancing, stooping, crouching, kneeling, and crawling. *Id.* He also opined Plaintiff had no manipulative or environmental limitations. *Id.* He opined the "prognosis is fair" for Plaintiff's back issues, and that the "prognosis is good" for Plaintiff's headaches, finger deformity, and limited use of hands. Tr. 315-16. The ALJ found Dr. Opara's opinion unpersuasive. Tr. 24.

First, the ALJ found Dr. Opara's opinion internally inconsistent because the significant standing and walking limitations were inconsistent with the medium lift and carry limitations, "as both these limitations were attributed to the tenderness and limited range of motion in the lumbar spine." *Id.* Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. § 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. § 416.920c(c)(1).

Plaintiff contends that standing and walking and lifting and carrying are different exertional activities, and that Dr. Opara's opinion is supported by the objective findings upon physical exam and imaging of his back. ECF No. 20 at 12-13; Tr. 317. However, Dr. Opara's only explanation for finding Plaintiff so limited he can stand and walk only two hours in a workday yet maintained the ability and

lift and carry up to 50 pounds occasionally, was that he was so limited due to tenderness and reduced range of motion in the lumbar spine. *Id.* Dr. Opara did not discuss the x-ray findings, although the x-ray report is attached to his evaluation. *See* Tr. 312-17. As Dr. Opara provided limited explanation for his opinion concerning standing and walking and lifting and carrying, and based his limits on the same objective findings, the ALJ reasonably found these limitations internally inconsistent. As the case is being remanded for reconsideration of Dr. Tuason's opinion, however, the ALJ shall reassess Dr. Opara's opinion concerning standing and walking and lifting and carrying limits to resolve any internal inconsistencies.

Next, the ALJ found that the standing and walking limitations were not supported by minimal findings during the exam such as negative straight leg raises and intact neurological function, and diffuse degenerative changes on the lumbar x-ray. Tr. 24. The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. § 416.920c(c)(1). Additionally, "the ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). However, an ALJ must consider all the relevant evidence in the record and may not point to only

1  those portions of the records that bolster his findings.  *See, e.g., Holohan*, 246 F.3d

2  at 1207-08.

3         Here, Dr. Opara also observed that Plaintiff walked with an antalgic gait and

4  had some difficulty climbing onto the exam table.  Tr. 313.  He observed a

5  "moderate degree of tenderness on palpation of the thoracic spine . . . [and]

6  diminished range of motion of the lumbar spine" and that Plaintiff could "squat

7  slightly, but [was] unable to hop."  Tr. 313-14.  Dr. Opara also explained he was

8  "unable to assess the muscle strength on the lower extremities due to pain in the

9  back with any movement of the lower extremities."  Tr. 315.  While the ALJ

10  includes diffuse degenerative disc disease under minimal findings, he does not

11  provide any support for his interpretation of this as a minimal finding, and Dr.

12  Tuason based his limitation for light exertion with postural limitations on the same

13  x-ray findings, as discussed *supra*.  *See* Tr. 75-76, 317.  As the ALJ notes

14  elsewhere in the decision, x-ray findings include diffuse degenerative disc disease

15  with two levels of retrolisthesis, diffuse facet arthropathy with osteophyte

16  formation, and mild S-shaped scoliosis.  *See* Tr. 21, 317.  In focusing on a few

17  normal findings from Dr. Opara's exam while failing to discuss relevant abnormal

18  findings, the ALJ failed to accurately characterize Dr. Opara's opinion, and his

19  conclusion that the standing and walking limits were not supported by the minimal

20  findings during the exam or on the x-ray is not supported by substantial evidence.

ORDER - 18

The ALJ also found that Dr. Opara's opinion was inconsistent with "the unremarkable physical examinations in the Benton County jail records prior the new onset of CHF in late 2018." Tr. 24. As discussed in relation to Dr. Tuason's opinion, *supra*, the ALJ selectively cited unremarkable findings from jail records when the longitudinal record shows more mixed findings during the period at issue, and the ALJ's finding here is similarly not supported by substantial evidence.

As this case is remanded to reconsider the opinion of Dr. Tuason, the ALJ shall also reconsider the opinion of Dr. Opara. Upon remand the ALJ is instructed to reconsider Dr. Opara's opinion, including resolving any issues of internal inconsistency in the opinion, and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject the opinion.

### 3. Other opinions

Plaintiff also challenges the ALJ's analysis of the opinions of Dr. Metoyer and Ms. Hodge. ECF No. 20 at 14-16. As for Ms. Hodge, Plaintiff contends the ALJ erred by failing to address her treatment recommendation Plaintiff should elevate his legs in 2018 and 2019 due to persistent bilateral leg and foot swelling. ECF No. 20 at 14. Defendant contends that Ms. Hodge's treatment recommendation does not constitute a medical opinion and therefore the ALJ was not required to address it. ECF No. 21 at 16.

ORDER - 19

1    Because this case is remanded to reconsider the opinions of Dr. Tuason and

2  Dr. Opara, the Court declines to address the challenges to the other medical

3  opinion evidence here.  However, upon remand the ALJ shall determine and make

4  a finding as to whether Ms. Hodge has provided a medical opinion.

5    The ALJ is instructed to reassess all medical opinion evidence.  The ALJ

6  shall reconsider all medical opinions along with the longitudinal record, resolve

7  any inconsistencies, and incorporate the limitations into the RFC or give reasons

8  supported by substantial evidence to reject the opinions.

9    **B. Plaintiff' Symptom Claims**

10    Plaintiff contends the ALJ improperly rejected Plaintiff's symptom

11  complaints.  ECF No. 20 at 16-20.  An ALJ engages in a two-step analysis to

12  determine whether to discount a claimant's testimony regarding subjective

13  symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine

14  whether there is objective medical evidence of an underlying impairment which

15  could reasonably be expected to produce the pain or other symptoms alleged."

16  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required

17  to show that [the claimant's] impairment could reasonably be expected to cause the

18  severity of the symptom [the claimant] has alleged; [the claimant] need only show

19  that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

20  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

ORDER - 20

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

5    omitted).  General findings are insufficient; rather, the ALJ must identify what

6    symptom claims are being discounted and what evidence undermines these claims.

7    *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

8    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

9    explain why it discounted claimant's symptom claims)).  "The clear and

10   convincing [evidence] standard is the most demanding required in Social Security

11   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

12   *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

13       Factors to be considered in evaluating the intensity, persistence, and limiting

14   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

15   duration, frequency, and intensity of pain or other symptoms; 3) factors that

16   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

17   side effects of any medication an individual takes or has taken to alleviate pain or

18   other symptoms; 5) treatment, other than medication, an individual receives or has

19   received for relief of pain or other symptoms; 6) any measures other than treatment

20   an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 20, 23.

   1.  *Inconsistent with Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the medical evidence.  Tr. 20-23.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

1    Here, the ALJ found Plaintiff's symptom claims were inconsistent with the

2    objective medical evidence, including relatively unremarkable physical

3    examinations in the Benton County jail records. Tr. 20-23. The ALJ cites to the

4    same evidence used to reject the medical opinions, discussed *supra*, including

5    musculoskeletal exams in 2018 showing grossly normal motor strength and

6    function in all extremities, as well as normal gait. Tr. 23 (citing Tr. 421, 448, 472,

7    496). The ALJ further notes that at the consultative exam with Dr. Opara in April

8    2019, straight leg raises were negative, and Plaintiff was "neurologically intact."

9    Tr. 23. However, an ALJ must consider all the relevant evidence in the record and

10   may not point to only those portions of the records that bolster his findings. *See,*

11   *e.g., Holohan*, 246 F.3d at 1207-08 (an ALJ cannot selectively rely on some entries

12   in plaintiff's records while ignoring others). As discussed *supra*, Dr. Opara also

13   observed that Plaintiff walked with an antalgic gait and had some difficulty

14   climbing onto the exam table. Tr. 313. He observed a "moderate degree of

15   tenderness on palpation of the thoracic spine . . . [and] diminished range of motion

16   of the lumbar spine." *Id.* He reported Plaintiff could "squat slightly, but [was]

17   unable to hop" and noted he was "unable to assess the muscle strength on the lower

18   extremities due to pain in the back with any movement of the lower extremities."

19   Tr. 314-15. While the ALJ discounts Plaintiff's symptom complaints because "an

20   x-ray of the lumbar spine only showed diffuse degenerative disc disease and

ORDER - 23

1    diffuse facet arthropathy," Tr. 23 (citing Tr. 317), as discussed *supra*, Dr. Tuason

2    explained the same imaging supported a limitation to light work.  *See* Tr. 76, 317.

3        Additionally, as discussed *supra*, the ALJ noted Benton County jail records

4    that tend to support Plaintiff's subjective reports during the period at issue,

5    including observations of edema in his bilateral feet and legs in 2018 and 2019;

6    and recommendations in 2018 and 2019 to elevate his lower extremities due to

7    swelling resulting in pain and difficulty walking.  Tr. 21-23.  The ALJ's finding

8    that objective medical evidence does not support Plaintiff's subjective complaints

9    is not supported by substantial evidence.

10       *2.  Other reasons*

11       Having determined a remand is necessary to readdress the medical source

12   opinions, the Court declines to assess the ALJ's other reasons for discounting

13   Plaintiff's symptom claims, and upon remand the ALJ is instructed also carefully

14   reevaluate Plaintiff's symptom claims in the context of the entire record.  *See Hiler*

15   *v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to

16   the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground

17   for remand.").

18   **C. Step Five Analysis**

19       Plaintiff argues the ALJ erred at step five by failing to find Plaintiff disabled

20   pursuant to Medical-Vocational Rule 202.04 as of his 55th birthday in 2019, and in

ORDER - 24

relying on the vocational expert's response to an incomplete hypothetical.  ECF

No. 20 at 20.  As the case is being remanded for the ALJ to reconsider the medical

opinion evidence, the ALJ is instructed to perform the sequential analysis anew,

including reconsidering the step-five analysis.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits as of

Plaintiff's 55th birthday, May 18, 2019.  ECF No. 20 at 20-21.  "The decision

whether to remand a case for additional evidence, or simply to award benefits is

within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th

Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court

reverses an ALJ's decision for error, the Court "ordinarily must remand to the

agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir.

2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course,

except in rare circumstances, is to remand to the agency for additional

investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the

Ninth Circuit has "stated or implied that it would be an abuse of discretion for a

district court not to remand for an award of benefits" when three conditions are

met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule,

where (1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide

legally sufficient reasons for rejecting evidence, whether claimant testimony or

medical opinion; and (3) if the improperly discredited evidence were credited as

true, the ALJ would be required to find the claimant disabled on remand, the Court

will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th

Cir. 2017). Even where the three prongs have been satisfied, the Court will not

remand for immediate payment of benefits if "the record as a whole creates serious

doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court finds further proceedings are necessary to further develop

the record and to resolve conflicts in the record, including conflicting medical

opinions as to his exertional limits during the entire period at issue. Additionally,

the record contains limited treatment records and no physical medical opinion

evidence post Plaintiff's CHF diagnosis in 2018. Upon remand the ALJ is

instructed to further develop the record in relation to CHF, including all updated

treatment records along with medical expert testimony and/or consultative

examination, if needed, to determine whether Plaintiff has additional limitations

related to this impairment and when such limitations began. As such, the case is

remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 29, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 27